UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANGELA WILBERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 15-cv-00080-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| GEICO CASUALTY COMPANY, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Angela Wilbers was involved in a car wreck with Geico's insured, Thomas Mangold, on January 31, 2014. After settlement negotiations failed, Wilbers filed suit against Mangold in Franklin Circuit Court on December 22, 2014. The Complaint was ultimately amended to include claims of common law bad faith and a violation of the Kentucky Unfair Claims Settlement Practices Act (KUCSPA) against Geico Casualty Company. Wilbers subsequently accepted a settlement offer, and Franklin Circuit Court dismissed all claims against Mangold, thereby leaving outstanding only the claims against Geico. Geico timely removed the action to this Court pursuant its diversity jurisdiction and then filed a Motion for Summary Judgment.[1] For the reasons explained below, Geico's Renewed Motion for Summary Judgment will be **GRANTED**.

---

[1] Geico's initial Motion for Summary Judgment [R. 15] was filed on August 2, 2017. On March 5, 2018, due to a citation issue with both parties' briefs, the Court dismissed the motion and directed the parties to refile their briefs in accordance with the rules set forth in the Bluebook for Legal Citations. [*See* R. 54.] This Renewed Motion for Summary Judgment followed on March 27, 2018. [R. 56.]

**I**

On January 31, 2014, Angela Wilbers was a passenger in a vehicle that was involved in a car wreck with Thomas Mangold, Geico's insured. [R. 56-1 at 1.] According to the police report, Mangold was "inattentive" when he rear-ended Wilbers's car, which was stopped in traffic. [R. 59-2 at 3-4.] Wilbers, as the passenger in her vehicle, claims she was reaching down to retrieve something on the floor when the car was rear-ended, which caused her to hit her head on the dashboard resulting in pain in her head, neck, and back. [R. 59 at 2.] The other two individuals involved in the wreck suffered no injuries. [R. 56-1 at 2.]

Following the accident, Wilbers was transported by ambulance to Baptist Hospital, where she was diagnosed with a thoracic strain, a cervical strain, and a head contusion. [R. 59 at 2; R. 59-3 at 115.] An MRI on February 4, 2014, revealed Wilbers had "degenerative disc space disease of the cervical spine," or "significant degenerative disc disease." [*See* R. 59-3 at 160; 163.] According to one doctor, Wilbers had a "nerve root entrapment and . . . preexisting degenerative osteoarthritis, which clearly has been aggravated by her accident." [R. 59-3 at 163.] The doctors recommended physical therapy and gave her work restrictions for six months. [*See* R. 59 at 3; R. 59-3 at 164.] However, during an independent medical evaluation on August 20, 2014, Dr. James Owen concluded that Wilbers had no active impairment prior to the wreck and that, based on his understanding, Wilbers had no preexisting difficulty. [R. 59-2 at 3; R. 59-3 at 319-20.]

On September 2, 2014, Wilbers sent a settlement demand to Geico seeking "all policy limits." [R. 56-1 at 4.] The demand itemized medical expenses at $15,401.28 and lost wages at $5,788.46; however, at that time, Wilbers only provided documentation supporting $9,871.60 in medical expenses with no supporting documentation for her claim to lost wages. [R. 56-1 at 4.]

Wilbers later supplemented her supporting documentation and, in doing so, increased the number of lost-work days and total lost wages. [*Id.* at 6.] This supplemental documentation increased Wilbers's lost wages to $7,897.50, but claimed even more undocumented lost wages, bringing the total lost wages to $8,447.40. [R. 56-4 at 258.] Geico received no further documentation for the remaining alleged medical expenses. [R. 56-1 at 6.] According to Wilbers, Geico's claim file indicates both a submitted and evaluated damages total of $23,568.78, and Geico's claims agent, Miranda Baggett, had received authorization to offer Wilbers the full policy limit of $25,000. [R. 59 at 4-5.] The claim file also included an entry stating "[i]njury consultation not required because of obvious policy limits," [*see* R. 59-5 at 22], but the parties dispute whether that statement was entered before or after the settlement.

On September 19, 2014, less that three weeks after Wilbers's policy-limits demand, Baggett made an initial settlement counteroffer of $12,621. [R. 59 at 5.] In a voicemail left the same day, Baggett advised Wilbers's attorney that two months of lost wages appeared to be excessive based on the documentation provided. [R. 56-1 at 7; R. 56-4 at 4.] Geico attempted to follow up on the offer multiple times before Wilbers's attorney informed Geico on October 8, 2014, that he was not authorized to negotiate and that Wilbers was considering filing suit. [R. 56-1 at 7.] Geico advised it was willing to negotiate further, but that it believed the records showed no recent treatment and demonstrated only possible aggravation of a preexisting condition. [*Id.*] Counsel for Wilbers indicated Wilbers had begun treatment again and would like to send additional documents for review. [*Id.*] Geico indicated it was willing to continue settlement negotiations and would review the additional documents; however, Geico never received any additional documentation. [*Id.* at 7-8.] Instead, Wilbers elected to file suit against Mangold and sent Geico a copy of the complaint on December 23, 2014. [*Id.* at 8.]

3

During the litigation, Geico continued to review the complaint, and, on March 11, 2015, Geico offered $25,000 to resolve the claim against Mangold. [*Id.*] Wilbers accepted the offer four months later because she had been out of town for work. [*Id.*] Subsequently, Wilbers amended her complaint to add claims against Geico for common law bad faith and a violation of KUCSPA. [*Id.*] Franklin Circuit Court ultimately dismissed Wilbers's claims against Mangold. [R. 1 at 2.] After becoming aware that Wilbers's claim against Geico satisfied this Court's diversity jurisdiction requirements, Geico timely removed the action. [R. 1.] In Wilbers's response to the Renewed Motion for Summary Judgment, she concedes to the dismissal of her common law bad faith claim. [R. 59 at 1, n.1.] Thus, the only claim before the Court on this Renewed Motion for Summary Judgment is the violation of the KUCSPA.

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact.

*Chao v. Hall Holding*, 285 F.3d 415, 424 (6th. Cir. 2002). Moreover, the movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue for trial. Fed. R. Civ. P. 56; *Holding Hall*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Holding Hall*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

The Kentucky Unfair Claims Settlement Practices Act (KUCSPA), KRS § 304.12-230, "is intended to protect the public from unfair trade practices and fraud" of insurance companies. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). Under the Act, both first-party insureds and third-party claimants, such as Wilbers, may sue insurance companies for various wrongs, including bad faith negotiations when denying a claim. *See id.*; *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). A valid KUCSPA cause of action is present if the following elements are satisfied:

>(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Thus, the burden is on Wilbers to offer proof of all three elements for her Complaint to survive summary judgment. *See Hollaway v. Direct General Ins. Co. of Miss., Inc.*, 497 S.W.3d 733, 737-38 (Ky. 2017). As an initial observation, the Court recognizes Geico never denied Wilbers's claim, and, in fact, the policy-limits offer in March 2015 came approximately six months after Wilbers's initial demand.

Furthermore, "[b]efore the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). "In order to justify an award of punitive damages, there must be proof of bad faith sufficient for the jury to conclude that there was conduct that was outrageous, because of the defendant's evil motive, or his reckless indifference to the rights of others."[2] *Glass*, 996 S.W.2d at 452; *see also Wittmer*, 864 S.W.2d at 890 ("[T]here must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or claimant."). If the evidence does not satisfy this "outrageous conduct" requirement, "the cause of action cannot be maintained." *Glass*, 996 S.W.2d at 452. Here, the principal issue in this Renewed Motion for Summary Judgment is whether Geico acted with outrageous conduct when negotiating with Wilbers.

**B**

Wilbers claims Geico violated KUCSPA by negotiating in bad faith when Geico made its initial settlement counteroffer of $12,621. To sustain such an action under Kentucky law, Wilbers must offer proof sufficient to satisfy the three elements set forth in *Wittmer*. *See*

---

[2] The Kentucky Supreme Court no longer recognizes the phrase "evil motive" because of its conotations to the casual speaker, but the requirement of outrageous conduct remains the same. *Hollaway*, 497 S.W.3d at 740 n.11.

*Wittmer*, 864 S.W.2d at 890. The only *Wittmer* element at issue here is whether Geico "knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer*, 864 S.W.2d at 890. That element can be satisfied by showing Geico's conduct in denying Wilbers's claim was outrageous or recklessly indifferent to Wilbers's rights. *See Hollaway*, 497 S.W.3d at 737-38; *Glass*, 996 S.W.2d at 452.

Wilbers alleges that Geico acted outrageously in negotiating the settlement because it relied on unsworn statements by Mangold. [R. 59 at 19.] Because Wilbers fails to claim where Geico did as much, the Court can only assume Wilbers is referring to Miranda Baggett's Affidavit, which contains a statement that Mangold told her that he was not injured and that he did not believe Wilbers was injured. [*See* R. 56-4 at 1-2.] Wilbers also suggests Geico's offering of $12,621 was outrageous because Geico's claim file notes that Baggett received authority to offer the policy's limit of $25,000. [R. 59 at 6.] However, in those same file notes, other Geico representatives express concern over excessive wage demands prior to Geico's counteroffer, and Miranda Baggett's notes indicate she left a voicemail the day of the offer indicating concern about the lost wage demands. [R. 59-3 at 378-80.]

The initial settlement demand contained discrepancies between Wilbers's itemized damages and expenses and the documentation provided in support of those claimed damages and expenses. Wilbers's settlement demand itemized $15,401.28 in medical expenses and $5,788.46 in lost wages, [*see* R. 56-4 at 38-39], but the supporting documentation only identified $9,871.60 in medical expenses with no explanation of lost wages, [*see id.* at 227-246]. Wilbers ultimately supplemented her supporting documentation, but discrepancies remained. [*Id.* at 258-260; R. 56-1 at .] These discrepancies suggest Geico did not act in bad faith but attempted to value Wilbers's claim based on the available supporting documentation, which Geico is allowed to do

7

when negotiating a settlement. *See Hollaway*, 497 S.W.3d at 739 ("The KUCSPA only requires insurers to negotiate reasonably with respect to claims; it does not require them to acquiesce to a third-party's demands.").

Even when construing the facts in Wilbers's favor, Geico did not act outrageously by making a counteroffer instead of accepting the demand for policy limits. In fact, Wilbers appears to state that the initial counteroffer would only have saved Geico $3,379. [R. 59 at 5.] After Geico made its first counteroffer, Wilbers's refused to negotiate beyond her policy-limits demand before filing suit. At no time did Geico refuse to negotiate its counteroffer; in fact, Geico continuously attempted to negotiate even when Wilbers's counsel never provided the additional treatment documentation as promised. [*See* R. 56-1 at 7-8.] In reality, there is evidence to suggest that between September 19, 2014, when Geico made its initial counteroffer, and December 23, 2014, when Wilbers filed her state action, Geico made at least nine phone calls to Wilbers's attorney to follow up on Geico's counteroffer. [*Id.*; *See* R. 56-4 at 1-6.] Within 4 months of the suit being filed – and 6 months after the initial settlement demand – Geico made the settlement offer that Wilbers ultimately accepted. [R. 56-1 at 8.] Simply put, Geico's actions do not rise to the level of outrageous conduct as contemplated by the KUCSPA.

### C

Wilbers contends that Miranda Baggett's Affidavit should be ignored because it is unreliable and is contradicted by her deposition testimony, and, alternatively, the Affidavit should be excluded under principles of judicial estoppel. [R. 59 at 27-28.] For support, Wilbers cites cases where the affidavits were provided after, and contradicted prior, depositions in an attempt to create genuine issues of material fact. [*See* R. 59 at 27.] Those cases are not applicable here. Miranda Baggett gave an affidavit before her deposition, and, in her deposition,

8

she states, "I don't recall anything other than what's on the affidavit." [R. 59-6 at 14.] Baggett's Affidavit and deposition testimony are not contradictory; therefore, her Affidavit will not be excluded on these grounds.

Additionally, the cases Wilbers cites concerning judicial estoppel also are not applicable here. [R. 59 at 28-29.] Generally, judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742 (2001) (quoting *Pegram v. Herdich*, 530 U.S. 211, 227 n.8 (2000)). As Wilbers acknowledges, judicial estoppel "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Colston Inv. Co. v. Home Supply Co.*, 74 S.W.3d 759, 763 (Ky. Ct. App. 2001).

Here, Wilbers claims Geico previously argued its communications with its insured, Thomas Mangold, were protected by attorney-client privilege, but Geico now relies on those communications to support its summary judgment motion. [R. 59 at 28.] Specifically, Wilbers avers Geico strongly relies on Baggett's Affidavit, which, in turn, relies on Geico's communications with Mangold. [*Id.*] Wilbers previously attempted to fight this affidavit prior to filing her response to Geico's initial summary judgment motion, and Magistrate Judge Atkins ruled against that argument. [*See* R. 46; R. 50.] While it is true that Baggett's Affidavit contains statements made by Mangold, [*see* R. 56-4 at 1-6], nothing in the record suggests Geico relies on those statements to support its motion. Therefore, Baggett's Affidavit will not be excluded on these grounds either.

### III

In order to sustain a claim under the KUCSPA, a plaintiff "must meet a high threshold

9

standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or claimant. . . .'" *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012). Here, Wilbers has not offered any proof that Geico acted with intentional misconduct, and Wilbers fails to point to evidence supportive of an assertion that Geico never intended to fairly negotiate with her. Under Kentucky law, an insurer can reasonably negotiate a claimant's demand. *See Hollaway*, 497 S.W.3d at 739. Indeed, Geico attempted, on many occasions, to negotiate with Wilbers, but Wilbers refused. Therefore, Wilbers has not meet the high burden to sustain a KUCSPA claim, and summary judgment is appropriate.

For the foregoing reasons, and being otherwise sufficiently advised, the Court hereby **ORDERS** that Defendant Geico Casualty Company's Renewed Motion for Summary Judgment [**R. 56**] is **GRANTED**. All pending motions are hereby denied as moot. Judgment in favor of Defendant shall be entered contemporaneously herewith.

This the 5th day of September, 2018.

Gregory F. Van Tatenhove
United States District Judge